IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Anne Wallace Wait, ) | C/A No.: 1:13-1363-TMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.      Relevant Background

    A.      Procedural History

On August 6, 2010, Plaintiff filed an application for SSI in which she alleged her disability began on September 30, 1997. Tr. at 130–36. Her application was denied initially and upon reconsideration. Tr. at 51, 53. On January 20, 2012, Plaintiff had a

hearing before Administrative Law Judge ("ALJ") Augustus C. Martin. Tr. at 20–50 (Hr'g Tr.). The ALJ issued an unfavorable decision on February 9, 2012, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 12–19. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–3. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on May 20, 2013. [Entry #1].

    B.    Plaintiff's Background and Medical History

        1.    Background

Plaintiff was 52 years old at the time of the hearing. Tr. at 25. She earned her graduate equivalency diploma. Tr. at 28. She has no PRW. Tr. at 46. She alleges she has been unable to work since September 30, 1997. Tr. at 130.

        2.    Medical History

On May 17, 2010, Plaintiff saw Dr. Lauren Clanton for follow-up regarding hypertension, hyperlipidemia, and sleep apnea. Tr. at 223. She reported doing well, but was disappointed she had not lost weight. *Id.* She also reported plans to relocate to get away from her alcoholic and abusive husband. *Id.* Dr. Clanton noted that Plaintiff self-reported that her sleep apnea was mild and that her blood pressure was under great control. Tr. at 223–24. Plaintiff was on no medications for depression after self-discontinuing Paxil, but she reported a better mood. Tr. at 224.

On November 1, 2010, Plaintiff visited the Medical University of South Carolina ("MUSC"), stating she had not been there in "forever." Tr. at 239. She reported concern

about her husband's health and noted his verbal and possible physical abuse. *Id.* She stated she was non-compliant with her cholesterol medication and regretted putting on some weight. *Id.* Her blood pressure was well controlled. Tr. at 241. She was on no medications for depression, but reported improved mood. *Id.* She stated she had decreased energy and was encouraged to exercise, lose weight, and get enough sleep. *Id.*

On February 10, 2011, state-agency psychological consultant Dr. Olin Hamrick reviewed the medical evidence of record and opined Plaintiff had no severe mental impairment, but indicated that she had a history of depression and life stressors. Tr. at 244–57. Dr. Hamrick opined that Plaintiff experienced mild difficulties in maintaining social functioning but no other limitations from her mental impairments. Tr. at 254. He noted Plaintiff was talkative when she applied for benefits, without difficulty with concentration, persistence, or pace. Tr. at 256. He also noted that Plaintiff was on no medications for her depression but had nonetheless reported improved mood. *Id.* Plaintiff also had reported being able to maintain her household, care for her child, drive, and manage money. *Id.*

On February 19, 2011, Plaintiff reported a cough, fever of up to 102 degrees, and chills. Tr. at 275. A chest examination on February 19, 2011, showed no evidence of acute cardiopulmonary disease. Tr. at 269. Imaging on February 25, 2011, showed normal myocardial perfusion and normal left ventricular perfusion. Tr. at 267–68.

On February 23, 2011, Plaintiff reported to the MUSC emergency room complaining of intermittent nausea and abdominal pain. Tr. at 273. Her physician suspected reflux and planned to treat it with Pepcid. Tr. at 274. The doctor also planned

an outpatient stress test because of Plaintiff's atypical chest pain radiating from her abdomen. *Id.*

On March 2, 2011, Plaintiff sought follow-up treatment at MUSC for recent stress tests results and reported being homeless. Tr. at 263–64. She complained of dysuria, fever, and chest discomfort. Tr. at 263. The treating physician noted non-obstructive coronary artery disease and emphasized the importance of taking lipid-lowering medication. Tr. at 264. Plaintiff's financial difficulties prevented work-up of her hirsutism. *Id.*

On March 13, 2011, Plaintiff presented to the emergency room reporting right neck pain and spasm while sitting in church, but this pain had resolved nearly completely by the time she was treated. Tr. at 271. Plaintiff also had a panic attack in the ambulance, but this too had resolved. *Id.*

On May 16, 2011, Plaintiff reported "falling apart" and complained of abnormal menstrual bleeding. Tr. at 305. She stated that she wanted to get back on medication for depression. *Id.* She was advised to continue statins and beta blockers and was referred to a gynecologist. Tr. at 306. She received a prescription for Celexa to treat depression. Tr. at 307.

On May 31, 2011, Dr. Kerri A. Kolehma performed a consultative orthopedic examination of Plaintiff. Tr. at 282. Plaintiff reported intermittent back pain caused by scoliosis, bilateral knee pain after a fall in 1986, and a history of a right hand cramp. *Id.* Plaintiff had a regular gait and full range of motion in her ankles but stopped heel walking after three steps due to ankle pain. Tr. at 283. Plaintiff also stopped spinal range

4

of motion testing due to pain. *Id.* Dr. Kolehma noted that Plaintiff had decreased range of motion in her lumbar spine and knees. Tr. at 284–85. Plaintiff had no instability in her knees but had mild crepitus and minimal loss of flexion. Tr. at 283. Dr. Kolehma opined Plaintiff would benefit from losing weight and possibly from a shoe lift. *Id.* The doctor also opined that extended standing and walking would increase Plaintiff's back and knee pain, but she could perform fine and gross arm movements and could ambulate without an assistive device. *Id.* Imaging of Plaintiff's right knee that day showed mild osteoarthritic findings, and spinal imaging showed diffuse mild spondylosis with moderate caudal facet hypertrophy. Tr. at 286–87.

On June 2, 2011, state-agency psychological consultant Dr. Michael Neboschick reviewed the evidence of record and opined Plaintiff had no severe mental impairment. Tr. at 288–301. He noted that Plaintiff had not alleged any psychiatric worsening since the prior opinion. Tr. at 300. He assessed mild limitations in activities of daily living and maintaining social functioning. Tr. at 298.

On June 13, 2011, Plaintiff reported "getting by." Tr. at 302. Her cholesterol was not yet at her goal, and her medication was increased. Tr. at 303. She was referred to a gynecologist for menorrhagia. *Id.* She had some improvement in her depression with Celexa, and her dosage was increased. Tr. at 304. She declined a colonoscopy because of financial issues. *Id.*

On June 29, 2011, state-agency medical consultant Dr. Jim Liao reviewed the medical evidence of record and opined Plaintiff could perform medium work. Tr. at 311–18. He limited Plaintiff to occasional climbing of ladders, ropes, and scaffolds, stooping,

5

crouching, and crawling. Tr. at 313. He also limited her to frequent climbing of ramps and stairs, balancing, and kneeling. *Id.*

    C.    The Administrative Proceedings

        1.    The Administrative Hearing

            a.    Plaintiff's Testimony

At the hearing on January 20, 2012, Plaintiff testified that she lived by herself at the InTown Suites motel. Tr. at 25. She stated that she did not have a driver's license and did not use a cane or walker. Tr. at 27–28. She said she had not worked since 1992. Tr. at 29. She reported difficulty sitting or standing for long periods and stated she worried about falling asleep in the middle of tasks as a result of her sleep apnea. *Id.* She testified that she took over-the-counter medication for her back pain. Tr. at 30. She stated that she had several panic attacks per week, but was not treated for them because no one believed that she had them. Tr. at 35. She testified that she thought her depression and anxiety would cause her not to interact with people as well as she would like. *Id.* She said that she cared for her personal needs, did her own shopping, cooked with a microwave, and read a lot. Tr. at 36. She stated that she could carry a bag containing two two-liter bottles of soda for a limited length of time and that it sometimes took her 15 minutes to walk two blocks to the store. Tr. at 39–40.

With regard to her sleep apnea, Plaintiff stated that she found herself falling asleep during the day and would also catch herself not breathing even when she was awake. Tr. at 43. She stated that she did not have a CPAP machine because she did not have enough money to get one. *Id.*

b.      Vocational Expert Testimony

Vocational Expert ("VE") Feryal Jubran reviewed the record and testified at the hearing. Tr. at 45, 121. The VE testified that Plaintiff did not have any PRW. Tr. at 46. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could do light work, but could not climb ladders, ropes, or scaffolds; could do all other postural movements occasionally; and was limited to simple, routine, repetitive tasks. Tr. at 46. The ALJ asked whether there were any other jobs in the region or national economy that the hypothetical person could perform. *Id.* The VE identified the jobs of housekeeper, stock checker, and assembler. Tr. at 46–47. The ALJ then asked the VE if the hypothetical individual could still perform those jobs if she needed to be able to alternate position at will. Tr. at 47. The VE stated that the hypothetical individual could still perform the jobs of assembler and stock checker, and could also perform the job of ticket seller. *Id.* Upon questioning by Plaintiff's counsel, the VE testified that even if the hypothetical individual could only stand for four hours during the workday, she would still be able to perform the jobs identified. Tr. at 48. The VE further testified that all jobs would be eliminated if the individual would miss one day of work per week. *Id.*

2.     The ALJ's Findings

In his decision of February 9, 2012, the ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since June 16, 2010, the application date (20 CFR 416.971 *et seq.*).
2. The claimant has the following severe impairments: back disorder, osteoarthritis, and obesity. (20 CFR 416.920(c)).
3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments

7

        in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). Specifically, the claimant is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours in an 8-hour day except that the claimant cannot climb ladders, ropes, or scaffolds, and can occasionally stoop, kneel, crouch, balance, and crawl. The claimant is limited to simple, repetitive, routine tasks and needs to be able to alternate position at will.
5. The claimant has no past relevant work (20 CFR 416.965).
6. The claimant was born on May 22, 1959 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).
7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 916.968).
9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).
10. The claimant has not been under a disability, as defined in the Social Security Act, since June 16, 2010, the date the application was filed (20 CFR 416.920(g)).

Tr. at 14–19.

II. Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1) the ALJ failed to comply with Social Security Regulation ("SSR") 00-4p by failing to reconcile conflicts between the VE's testimony and the *Dictionary of Occupational Titles* ("*DOT*"); and

2) the ALJ did not properly consider Plaintiff's combined impairments, including sleep apnea.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.   Legal Framework

1.   The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity.  20 C.F.R. § 416.925.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment.  20 C.F.R. § 416.920(a)(4)(iii).  To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

9

impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 416.920(a), (b), SSR 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v.*

---

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 416.920(h).

*Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be

affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    B.    Analysis

        1.    The ALJ complied with SSR 00-4p.

Plaintiff first asserts that the ALJ did not reconcile the VE's testimony with the *DOT* as required by SSR 00-4p. [Entry #12 at 4–6]. Pursuant to SSR 00–4p, before relying on VE testimony to support a disability determination, an ALJ must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by a VE and information in the *DOT*. SSR 00–4p, at *4. The ALJ has an affirmative duty to ask about any possible conflict between the VE evidence and the *DOT*. *Id.* The ALJ "will explain in the determination or decision" how he resolved the conflict and "must explain the resolution of the conflict irrespective of how the conflict was identified." *Id.*

Plaintiff contends that the ALJ did not resolve an alleged conflict between the sit/stand option included in the RFC assessment and the absence of any references to sit/stand options in the *DOT*. The ALJ noted in his decision that the VE testified that the sit/stand work requirement is not found within the *DOT* and that, based on her professional knowledge and/or personal observations, the VE testified that such an option was available for the occupations she identified. Tr. at 19. Plaintiff argues that the VE testified to neither of these issues. [Entry #12 at 4–5].

The heart of Plaintiff's allegation of error is whether the ALJ violated SSR 00-4p. That determination is dependent on whether a conflict existed between the VE's

testimony and the *DOT*. The Commissioner contends that no conflict exists because the *DOT* is silent as to a sit/stand option. [Entry #13 at 9–10]. Furthermore, the ALJ asked the VE to advise him of any conflicts between her opinion and the *DOT* and she identified none. *Id.* at 9 (citing Tr. at 46).

Because the *DOT* is silent as to a sit/stand option, the undersigned recommends a finding that the VE's testimony regarding the jobs the hypothetical individual could perform is not in conflict with the *DOT*. *See Thompson v. Astrue*, C/A 8:09-1968-JFA-BHH, 2010 WL 3878729, at *4 (D.S.C. June 16, 2010) (collecting cases and holding there can be no apparent conflict between sit/stand testimony and the *DOT* because the *DOT* does not discuss the availability of a sit/stand option), *adopted by* 2010 WL 3880047.

The undersigned agrees with Plaintiff that, despite the ALJ's statement to the contrary, the VE did not testify to the two issues related to the sit/stand option identified above. However, this error by the ALJ was harmless because it would not have changed his decision. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error"). It is undisputed that the *DOT* does not include information on a sit/stand option; thus, whether the VE testified to that fact is unimportant. Likewise, whether the VE testified that her testimony regarding sit/stand options was based on her professional knowledge and/or personal observations does not matter. The ALJ specifically asked the VE if the jobs she had identified could be performed by an individual who needed to be able to alternate position at will. Tr. at

13

47. The VE stated that the individual could still perform the jobs of assembler and stock checker, but could not perform the job of housekeeper. *Id.* Inherent in the VE's testimony is that it was based on her professional knowledge and, if asked, she undoubtedly would have testified as such. Consequently, the undersigned recommends a finding that the only conflict identified by Plaintiff was harmless in nature.

For the foregoing reasons, the undersigned recommends a finding that the ALJ complied with SSR 00–4p in evaluating the VE's testimony.

2. The ALJ adequately assessed Plaintiff's combined impairments.

Plaintiff also argues that the ALJ failed to identify her obstructive sleep apnea as either a severe or non-severe impairment and, as such, failed to consider it in combination with her other impairments. [Entry #12 at 7]. Plaintiff further contends that the ALJ did not discuss the combined effect of her depression, obesity, and pain on her ability to work. *Id.* at 8. The Commissioner responds that the ALJ expressly considered the combined effect of Plaintiff's impairments and that any error with regard to Plaintiff's sleep apnea was harmless because she has not demonstrated any functional limitations related to that impairment.

a. Combined impairments generally

When, as here, a claimant has more than one impairment, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that the ALJ consider the combined effect of these impairments in determining the claimant's disability status. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *see also Saxon v. Astrue*, 662 F. Supp. 2d 471, 479 (D.S.C. 2009) (collecting

14

cases in which courts in this District have reiterated importance of the ALJ's explaining how he evaluated the combined effects of a claimant's impairments). The Commissioner is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B) (2004). The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50. "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.*

In his listing analysis, the ALJ stated that he had considered the combined effects of Plaintiff's severe and non-severe impairments and determined that that they were not at least equal in severity to those described in Listings 1.00 (musculoskeletal system) and 12.00 (mental disorders). Tr. at 15. The ALJ also specifically found that there was no convincing evidence in the record demonstrating that Plaintiff's obesity increased the severity or functional limitations of any of her other impairments. *Id.* Plaintiff admits that by limiting her to simple, routine, repetitive work, the ALJ "considered [her] obesity together with her anxiety and depression." [Entry #14 at 3].

The undersigned finds that the ALJ's discussion of Plaintiff's combined impairments is sufficient under *Walker*. Furthermore, Plaintiff has offered no explanation of how more discussion of her combined impairments may have changed the ALJ's decision. For these reasons, the undersigned recommends a finding that the ALJ's decision sufficiently addressed Plaintiff's combined impairments. *See Brown v. Astrue*, C/A No. 0:10-1584-RBH, 2012 WL 3716792, at *6 (D.S.C. Aug. 28, 2012) (finding that

15

Fourth Circuit precedent issued after *Walker* suggests that *Walker* was not meant to be used as a trap for the Commissioner).

       b.  Sleep apnea

 Plaintiff asserts that the ALJ's failure to identify sleep apnea as a non-severe impairment resulted in his failure to consider it in combination with her other impairments. [Entry #12 at 7]. She concedes that her sleep apnea was not severe, but asserts that its repeated reference in her records and her testimony that she worries about falling asleep in the middle of a task establish that the condition causes functional limitations. [Entry #14 at 3]. The Commissioner argues that Plaintiff has failed to establish any functional limitations associated with her sleep apnea rendering harmless any error by the ALJ in not expressly finding it to be a non-severe impairment. [Entry #13 at 8].

 Plaintiff's allegation of error turns on whether she has sufficiently established that her sleep apnea causes functional limitations. Her medical records repeatedly note obstructive sleep apnea as a part of her medical history. *See, e.g.*, Tr. at 223, 239, 263, 275, 302, 305. However, some records also note that the condition is "mild per patient by sleep study." *See, e.g.*, Tr. at 223, 302, 305. Other than noting sleep apnea as part of Plaintiff's medical history, none of her records discuss problems or treatment related to the condition. Thus, the medical records establish no functional limitations related to sleep apnea. On the contrary, a report of contact dated April 7, 2011, provides that Plaintiff reported losing almost 100 pounds and that her weight loss had "helped tremendously with her sleep apnea." Tr. at 197.

The only evidence establishing functional limitations caused by sleep apnea is Plaintiff's hearing testimony. She stated that she worried about falling asleep during a task. Tr. at 29. She testified that she caught herself falling asleep during the day and also caught herself not breathing even when she was awake. Tr. at 43. The ALJ referenced Plaintiff's hearing testimony regarding sleep apnea in his decision, but also noted that the medical record did not contain any sleep studies. Tr. at 16. The ALJ went on to discount Plaintiff's overall credibility based on her limited treatment notes, the effectiveness of her medications, her decision to decline supportive services, and the lack of physical limitations documented in her records. Tr. at 17. Plaintiff has not challenged the ALJ's credibility determination and, after a close review of the record, the undersigned finds no basis for doing so.

Because Plaintiff's only evidence of functional limitations related to sleep apnea is her own testimony and that testimony was discounted by the ALJ, the undersigned recommends a finding the ALJ's failure to categorize sleep apnea as a non-severe impairment was harmless. *See Mickles*, 29 F.3d at 921.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether her decision is supported as a matter of fact and law. Based on the foregoing, the undersigned recommends the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

*[Signature: Shiva V. Hodges]*

April 3, 2014  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

18

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).